UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| **AGXPLORE INTERNATIONAL, LLC,** | ) )
) | 
| Plaintiff, | ) )  Case No. |
| v. | ) ) |
| **JOSEPH DANIEL SHEFFER,** 2573 Silversmith Ct. Cape Girardeau, Missouri 63701 | ) ) ) ) |
| **JEREMY SHEFFER,** 329 Main St. Cape Girardeau, Missouri 63701 | ) ) ) ) |
| **MERISTEM CROP PERFORMANCE GROUP, LLC,** Registered Agent Solutions, Inc. 711 N 11th Street Saint Louis, Missouri 63101-1231 | ) ) ) ) ) ) |
| Defendants. | ) ) |

## <u>VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF</u>

Plaintiff AgXplore International, LLC ("**AgXplore**"), states as follows for its Verified Complaint for Injunctive and Other Relief against Defendants Jeremy Sheffer ("**J. Sheffer**"), Joseph Daniel Sheffer ("**D. Sheffer**" collectively with J. Sheffer, the "**Sheffers**"), and Meristem Crop Performance Group, LLC ("**Meristem**" collectively with D. Sheffer and J. Sheffer, the "**Defendants**"):

## <u>PARTIES, JURISDICTION AND VENUE</u>

1.      Plaintiff AgXplore is a limited liability company organized and existing under the laws of the State of Missouri with its principal place of business in Parma, Missouri.

2.      Defendant J. Sheffer is an adult male and citizen of Missouri who currently resides in Cape Girardeau, Missouri.

3.       Defendant D. Sheffer is an adult male and citizen of Missouri who currently resides in Cape Girardeau, Missouri.

4.      Defendant Meristem is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business in Dover, Delaware.

5.      This trade secret misappropriation action raises a federal question under the Federal Defend Trade Secrets Act ("DTSA").  Thus, this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over AgXplore's other claims pursuant to 28 U.S.C. § 1367.

6.      This Court has personal jurisdiction over Defendant and venue is appropriate in this Court pursuant to a forum selection clause contained in the Agreements (defined herein) that J. Sheffer and D. Sheffer signed, which contain the restrictive covenants at issue in this action. Specifically, the Agreements provide that the exclusive venue and jurisdiction for any litigation concerning enforcement of the terms of the Agreements shall be in either the Circuit Courts of New Madrid County or this Court.  In the Agreements, J. Sheffer and D. Sheffer also expressly consented to personal jurisdiction in courts within the State of Missouri.

7.      Further, venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to AgXplore's claims occurred in this District.   In addition, venue is proper in this District because, as an LLC with its principal place of business in New Madrid County, Missouri (which is located in this District), AgXplore suffered injury, and continues to suffer injury, in this District as a result of Defendants' wrongful conduct.

**BACKGROUND**

8.     AgXplore is a crop management solutions company that employs agronomists, nutritionists, biochemists, sales representatives, among others, who work directly with crop growers to provide products necessary for plant nutrition management.  AgXplore has provided crop management services and products to its customers across the US and Canada for more than 20 years.

9.     AgXplore is engaged in the business of, among other things, the design and sale of crop management products, technology, and services to customers across the US and Canada.

**A.     J. Sheffer Agreements.**

10.     In May 2021, AgXplore hired Defendant J. Sheffer as Executive Vice President and Chief Operating Officer.  As a condition of his employment, Defendant executed a Non-Solicitation and Non-Disclosure Agreement (the "**J. Sheffer Agreement**") on or about May 7, 2021.  A true and correct copy of the J. Sheffer Agreement is attached hereto as **Exhibit 1**.

11.     Under the J. Sheffer Agreement, J. Sheffer agreed he would not directly or indirectly solicit or accept business from, accept employment with, work for, provide assistance to, or otherwise divert from AgXplore any customer or prospective customer of AgXplore for products or services that are similar to or competitive with products or services offered or sold by AgXplore as of the date of his termination, including but not limited to management aids, nutritional products, adjuvants, micronutrient fertilizers, insect and animal repellants and attractants, organic products, and other specialty products for a period of twelve months after the date J. Sheffer resigned or was terminated with or without cause. *See* Ex. 1, § 1.a.

12. Customers included in the J. Sheffer non-solicitation provision include those "about which Employee learned any Confidential Information during his or her employment." *See* Ex. 1, § 1.

13. In addition, under the J. Sheffer Agreement, J. Sheffer agreed he would not undertake or engage in any employment or business activities involving the disclosure or use of AgXplore's trade secrets or Confidential Information (as defined by the J. Sheffer Agreement). Ex. 1, §§ 1.d, 3.

14. In late-October 2022, J. Sheffer and AgXplore's CEO, Tim Gutwein, had discussions about J. Sheffer's departure from AgXplore and the potential terms of a severance agreement related to J. Sheffer's departure from AgXplore.

15. On or about, November 14, 2022, J. Sheffer executed a Confidential Severance Agreement and Release, which among other things, extended the restrictive covenant terms of the J. Sheffer Agreement to twenty-four months after his October 31, 2022 separation date (the "**Severance Agreement**"). A true and correct copy of the Severance Agreement is attached hereto as **Exhibit 2**.

16. Under the Severance Agreement, J. Sheffer again agreed to not use, disclose, divulge, or communicate AgXplore's trade secrets or any Confidential Information (as defined by the Severance Agreement) of AgXplore.  Ex. 2, § 9.c.

17. J. Sheffer received a substantial sum of severance benefits under the terms of the Severance Agreement including severance compensation. See Ex. 2, § 2

18. J. Sheffer's reaffirmation and extension of the restrictive covenants and confidentiality provisions of the J. Sheffer Agreement were material inducements for AgXplore's payment of the severance benefits. See Ex. 2, § 9.

19.     Under the terms of the Severance Agreement, J. Sheffer is required to pay back all severance benefits paid to him minus $1,000 if found to be in breach of the Agreements. See Ex. 2, § 9.f.

20.     Following J. Sheffer's separation but before execution of the Severance Agreement reaffirming and extending his restrictive covenants under the J. Sheffer Agreement, AgXplore shut down J. Sheffer's email access.

21.     In shutting down J. Sheffer's email access, an AgXplore employee informed Mr. Gutwein that J. Sheffer sent various emails from his AgXplore email account to his personal email account shortly after discussions began surrounding his separation.

22.     Without reviewing the content of such emails, Mr. Gutwein asked J. Sheffer why he forwarded emails to himself, and J. Sheffer informed Mr. Gutwein that he forwarded information to himself as potential leverage in the negotiation of the Severance Agreement.

23.     Thereafter, the Severance Agreement was executed under which J. Sheffer reaffirmed his post-employment obligations under the J. Sheffer Agreement (and extended same for a period of 24 months from his October 31, 2022 resignation date) including among other things:

(a)     not directly or indirectly solicit or accept business from, accept employment with, work for, provide assistance to, or otherwise divert from AgXplore any customer or prospective customer of AgXplore for products or services that are similar to or competitive with products or services offered or sold by AgXplore as of the date of his termination, including but not limited to management aids, nutritional products, adjuvants, micronutrient fertilizers, insect and animal repellants and attractants, organic products, and other specialty products for a period of twelve months after the date J. Sheffer resigned or was terminated with or without cause. *See* Ex. 1, § 1.a; Ex. 2, 9.a.

(b)     not use, disclose, divulge, or communicate AgXplore's trade secrets or any Confidential Information (as defined by the Severance Agreement) of AgXplore. Ex. 2, § 9.c.

24.     The J. Sheffer Agreement includes a tolling provision extending the duration of these post-employment restrictions by the duration of time during which J. Sheffer is in violation of the restrictions. *See* Ex. 1, § 2

**B.      D. Sheffer Agreement.**

25.     In November 2021, AgXplore hired Defendant D. Sheffer as Sales Agronomist.  As a condition of his employment, D. Sheffer executed a Non-Solicitation and Non-Disclosure Agreement (the "**D. Sheffer Agreement**", collectively with the J. Sheffer Agreement and Severance Agreement, the "**Agreements**") on or about November 9, 2021.  A true and correct copy of the D. Sheffer Agreement is attached hereto as **Exhibit 3**.

26.     Under the D. Sheffer Agreement, D. Sheffer agreed he would not directly or indirectly solicit or accept business from, accept employment with, work for, provide assistance to, or otherwise divert from AgXplore any customer or prospective customer of AgXplore for products or services that are similar to or competitive with products or services offered or sold by AgXplore as of the date of his termination, including but not limited to management aids, nutritional products, adjuvants, micronutrient fertilizers, insect and animal repellants and attractants, organic products, and other specialty products for a period of twelve months after the date J. Sheffer resigned or was terminated with or without cause. *See* Ex. 3, § 1.a.

27.     In addition, under the D. Sheffer Agreement, D. Sheffer agreed he would not undertake or engage in any employment or business activities involving the disclosure or use of AgXplore's trade secrets or Confidential Information (as defined by the D. Sheffer Agreement). Ex. 3, §§ 1.d, 3.

28.     The D. Sheffer Agreement includes a tolling provision extending the duration of these post-employment restrictions by the duration of time during which D. Sheffer is in violation of the restrictions. *See* Ex. 3, § 2

**C.     Access to Confidential Information.**

29.     In order to achieve its objectives as a business, AgXplore entrusted much of its confidential and sensitive business information to the Sheffers.

30.     In order to achieve its objectives as a business, AgXplore entrusted many of its valuable customer relationships to the Sheffers.

31.     During their employment at AgXplore, the Sheffers were given access to and acquired knowledge of confidential and sensitive business information of AgXplore, including but not limited to knowledge of AgXplore's customers and prospective customers, costs and pricing information, and marketing and business development strategies.

32.     In J. Sheffer's capacities as Executive Vice President and Chief Operating Officer and D. Sheffer's capacity as Sales Agronomist, the Sheffers had direct contact with AgXplore's customers.  J. Sheffer had access to Confidential Information including customer-specific sales data for every AgXplore customer.  D. Sheffer had Confidential Information concerning every customer he serviced.  With this Confidential Information and customer contact, which included maintaining and building the goodwill of customers, developing and obtaining pricing and providing pricing to customers, and remaining in consistent contact with customers, the Sheffers obtained knowledge of confidential and sensitive business information regarding AgXplore's customers, including their preferences, needs, requirements, and pricing.

33.     Indeed, by virtue of their positions, the Sheffers essentially possessed (and still possess) the goodwill AgXplore has with various customer relationships.

**D.     The Sheffers Resign and Engage in Violations of the Agreements.**

34.     J. Sheffer separated from his employment with AgXplore, and his last day of employment with AgXplore was October 31, 2022.

35.     D. Sheffer resigned from his employment with AgXplore, and his last day of employment with AgXplore was April 28, 2023.

36.     Following their tenures at AgXplore, the Sheffers became employed by Meristem—a direct competitor of AgXplore.

37.     On April 27, 2023, AgXplore sent J. Sheffer a letter reminding him of his post-employment obligations under the J. Sheffer Agreement and Severance Agreement and demanding strict compliance with same. A true and accurate copy of the April 27, 2023 letter to J. Sheffer is attached hereto as **Exhibit 4**.

38.     On May 1, 2023, AgXplore sent D. Sheffer a letter reminding him of his post-employment obligations under the D. Sheffer Agreement and demanding strict compliance with same. A true and accurate copy of the May 1, 2023 letter to D. Sheffer is attached hereto as **Exhibit 5**.

39.     Initially unbeknownst to AgXplore, in their positions with Meristem, the Sheffers began soliciting business from AgXplore's customers—even after their receipt of letters from AgXplore demanding their strict compliance with the Agreements.

40.     On June 2, 2023, AgXplore was informed by an AgXplore employee that the week prior, Sheffers solicited a current AgXplore customer (Greenpoint AG) on behalf of Meristem and sought to divert Greenpoint AG's business from AgXplore to Meristem by offering the sale of products that were the same or similar to AgXplore products. Greenpoint AG was an AgXplore customer during and before the Sheffers' employment with AgXplore.

41.     On information and belief, the Sheffers acknowledged to AgXplore's customer that they received letters from AgXplore demanding their compliance with the Agreements but stated that AgXplore could not stop them from selling to AgXplore's customers.

42.     Upon learning of this solicitation of Greenpoint AG, AgXplore reviewed the emails that J. Sheffer forwarded to himself shortly before signing the Severance Agreement and discovered that J. Sheffer forwarded numerous spreadsheets and information containing AgXplore's Confidential Information and trade secrets including customer lists and customer-specific pricing information related to effectively every AgXplore customer—including Greenpoint Ag.

43.     For example, on October 26, 2022, J. Sheffer forwarded himself, among other confidential and proprietary information:

(a)     A spreadsheet entitled "2021 and 2022 - US Sales. v2" containing nearly 9,000 entries of invoices, products, invoice totals, customer-specific discounts, and customer-specific rebates associated with AgXplore's customers in the US;

(b)     A spreadsheet entitled "Canada Sales 2021 and 2022_08.01.2022" containing entries of invoices, products, invoice totals, customer-specific discounts, and customer-specific rebates associated with AgXplore's customers in Canada;

(c)     A spreadsheet entitled "Q1 2022 – Sales Analysis" containing sales by AgXplore representatives, sales amounts by product, and product's sales variance

(d)     A spreadsheet entitled "TTM Sales by Rep and Manager" containing sales by sales representative, sales by manager, and various invoice, pricing, and customer-specific pricing information

(e)     A spreadsheet entitled "COST PRICE ANALYSIS BUILD" containing production information, current cost and pricing calculations, published and current costs analyses, pricing margins, and inventory

(f)     Spreadsheets entitled "SaleAnal - Jul YTD 2022" and "CN SaleAnal - Jul YTD 2022" containing detailed client information, customer-specific sales data, and invoice data for AgXplore's customers in the US and Canada

(g)     Spreadsheet entitled "Ops Labor" containing detailed analysis of AgXplore's operations, costs, and payroll.

True and accurate copies of the October 26, 2022 emails that J. Sheffer forwarded to his personal email account are attached hereto as **Exhibit 6**.

44.     Of the proprietary data and information that J. Sheffer forwarded to himself, much was password-protected and/or accessible to only a limited number of employees in the accounting department and certain high-ranking executives at AgXplore including J. Sheffer.

45.     On information and belief, D. Sheffer received the proprietary information that J. Sheffer forwarded to himself from his brother J. Sheffer after joining him at Meristem just a few months later.

46.     On information and belief, the Sheffers took AgXplore's customer list and other confidential and sensitive business information, including clients' pricing information and contacted AgXplore's customers to solicit the customers to transfer their business from AgXplore to Meristem.

47.     Upon information and belief, the Sheffers continue to solicit business from AgXplore's customers in an attempt to divert AgXplore's customers to Meristem.

48.     The Sheffers' actions to date constitute clear breaches of the Agreements.

49.     The confidential and sensitive business information about AgXplore's business and its customers, including, for example, customer-specific pricing information and customer purchase information, and AgXplore's relationships with its customers are critical to the success of AgXplore's business.

50.     AgXplore has devoted substantial time, financial resources, and other resources, and has engaged in extensive efforts to establish and maintain its customer base and to develop large quantities of confidential and sensitive business information regarding its customers and business.

## COUNT I
## BREACH OF CONTRACT
### (Against J. Sheffer)

51.   AgXplore realleges all other allegations set forth in this Verified Complaint and incorporates them by reference as if fully set forth herein.

52.   The J. Sheffer Agreement and Severance Agreement constitute valid and enforceable contracts between AgXplore and J. Sheffer.

53.   J. Sheffer accepted the terms of the J. Sheffer Agreement and Severance Agreement, J. Sheffer received consideration pursuant to the J. Sheffer Agreement and Severance Agreement, and the J. Sheffer Agreement and Severance Agreement have definite and certain terms.

54.   At all times, AgXplore fully performed its obligations under the J. Sheffer Agreement and Severance Agreement.

55.   Under the J. Sheffer Agreement and Severance Agreement, J. Sheffer agreed, among other things, that for two (2) years following the end of his employment, he would not directly or indirectly solicit or accept business from, accept employment with, work for, provide assistance to, or otherwise divert from AgXplore any customer or prospective customer of AgXplore for products or services that are similar to or competitive with products or services offered or sold by AgXplore as of the date of his termination, including but not limited to management aids, nutritional products, adjuvants, micronutrient fertilizers, insect and animal repellants and attractants, organic products, and other specialty products for a period of twelve months after the date J. Sheffer resigned or was terminated with or without cause. *See* Ex. 1, § 3(a) (emphasis added).

56.     Under the Severance Agreement, J. Sheffer again agreed to not use, disclose, divulge, or communicate AgXplore's trade secrets or any Confidential Information (as defined by the Severance Agreement) of AgXplore.  Ex. 2, § 9.c.

57.     On information and belief, J. Sheffer took and used AgXplore's Confidential Information to solicit business from AgXplore customers and divert their business to Meristem.

58.     J. Sheffer breached his obligations under the J. Sheffer Agreement and Severance Agreement by soliciting and attempting to divert established customers of AgXplore, of which he had contact and/or learned Confidential Information during his employment with AgXplore, during the Severance Agreement's non-solicitation period.

59.     By virtue of the foregoing events and actions undertaken by J. Sheffer, J. Sheffer has caused, and will cause in the future, substantial, immediate, and irreparable harm to AgXplore, its business, and its operations through his violation and continued breach of the J. Sheffer Agreement and Severance Agreement.

60.     Through the factual allegations contained herein, AgXplore has established a likelihood of success on the merits, that there exists no adequate remedy at law, and that a balancing of the equities favors the entry of an injunction against J. Sheffer.

61.     Unless J. Sheffer is temporarily, preliminarily, and permanently enjoined from committing and continuing to commit the foregoing conduct, AgXplore will be irreparably harmed.

62.     Pursuant to the express terms of the J. Sheffer Agreement and Severance Agreement, AgXplore is entitled to recover its attorneys' fees, legal expenses, and costs incurred in instituting and prosecuting this action. *See* Ex. 1, § 8; Ex. 2, § 16

WHEREFORE, AgXplore respectfully prays for the following relief:

12

a.      For temporary, preliminary, and permanent injunctive relief enjoining Defendant such that Defendant and all others acting in concert with him be enjoined and restrained, for a period of two (2) years, from directly:

> (i) soliciting or diverting or attempting to solicit or divert any customer of AgXplore for products or services that are similar to or competitive with products or services offered or sold by AgXplore; and

b.      For an order requiring an accounting of all profits, compensation, commissions, remuneration, or benefits that Defendant has realized or may realize in the future as a result of any unfair competition;

c.      For damages in an amount that is fair and reasonable;

d.      For exemplary and punitive damages;

e.      For AgXplore's attorneys' fees and costs incurred herein; and

f.      For such other relief that this Court deems to be just and proper.

## COUNT II
## BREACH OF CONTRACT
### (Against D. Sheffer)

63.     AgXplore realleges all other allegations set forth in this Verified Complaint and incorporates them by reference as if fully set forth herein.

64.     The D. Sheffer Agreement constitutes a valid and enforceable contract between AgXplore and D. Sheffer.

65.     D. Sheffer accepted the terms of the D. Sheffer Agreement, D. Sheffer received consideration pursuant to the D. Sheffer Agreement, and the D. Sheffer Agreement has definite and certain terms.

66.     At all times, AgXplore fully performed its obligations under the D. Sheffer Agreement.

13

67. Under the D. Sheffer Agreement, D. Sheffer agreed, among other things, that for twelve (12) months following the end of his employment, he would not directly or indirectly solicit or accept business from, accept employment with, work for, provide assistance to, or otherwise divert from AgXplore any customer or prospective customer of AgXplore for products or services that are similar to or competitive with products or services offered or sold by AgXplore as of the date of his termination, including but not limited to management aids, nutritional products, adjuvants, micronutrient fertilizers, insect and animal repellants and attractants, organic products, and other specialty products for a period of twelve months after the date D. Sheffer resigned or was terminated with or without cause. *See* Ex. 3, § 1.a (emphasis added).

68. Under the D. Sheffer Agreement, D. Sheffer agreed to not undertake or engage in any employment or business activities involving the disclosure or use of AgXplore's trade secrets or Confidential Information (as defined by the D. Sheffer Agreement).  Ex. 3, § 1.d.

69. On information and belief, D. Sheffer took and used AgXplore's Confidential Information learned from his employment with AgXplore and received from his brother J. Sheffer to solicit business from AgXplore customers and divert their business to Meristem.

70. D. Sheffer breached his obligations under the D. Sheffer Agreement by soliciting and attempting to divert established customers of AgXplore, of which he had contact and/or learned Confidential Information during his employment with AgXplore, during the D. Sheffer Agreement's non-solicitation period.

71. By virtue of the foregoing events and actions undertaken by D. Sheffer, D. Sheffer has caused, and will cause in the future, substantial, immediate, and irreparable harm to AgXplore, its business, and its operations through his violation and continued breach of the D. Sheffer Agreement.

72.     Through the factual allegations contained herein, AgXplore has established a likelihood of success on the merits, that there exists no adequate remedy at law, and that a balancing of the equities favors the entry of an injunction against D. Sheffer.

73.     Unless D. Sheffer is temporarily, preliminarily, and permanently enjoined from committing and continuing to commit the foregoing conduct, AgXplore will be irreparably harmed.

74.     Pursuant to the express terms of the D. Sheffer Agreement, AgXplore is entitled to recover its attorneys' fees, legal expenses, and costs incurred in instituting and prosecuting this action. *See* Ex. 3, § 8.

WHEREFORE, AgXplore respectfully prays for the following relief:

a.      For temporary, preliminary, and permanent injunctive relief enjoining D. Sheffer such that D. Sheffer and all others acting in concert with him be enjoined and restrained, for a period of twelve (12) months, from directly:

> (i) soliciting or diverting or attempting to solicit or divert any customer of AgXplore for products or services that are similar to or competitive with products or services offered or sold by AgXplore; and

b.      For an order requiring an accounting of all profits, compensation, commissions, remuneration, or benefits that D. Sheffer has realized or may realize in the future as a result of any unfair competition;

c.      For damages in an amount that is fair and reasonable;

d.      For exemplary and punitive damages;

e.      For AgXplore's attorneys' fees and costs incurred herein; and

f.      For such other relief that this Court deems to be just and proper.

## COUNT III
### VIOLATION OF THE DEFEND TRADE SECRETS ACT

**(Against all Defendants)**

75.     Plaintiff realleges all other allegations set forth in this Verified Complaint and incorporates them by reference as if fully set forth herein.

76.     AgXplore is the owner of valuable trade secrets related to products and services used in, or intended for use in, interstate or foreign commerce.

77.     Defendants have improperly misappropriated, and threaten to further misappropriate, AgXplore's trade secrets through the improper disclosure and use of such secrets.

78.     Any disclosures or use of AgXplore's trade secrets by Defendants were not and will not be with AgXplore's consent, and such disclosures and uses violate the DTSA. Indeed, such disclosures also violate the terms of the Agreements the Sheffers signed with AgXplore, further reflecting that Defendants' use and disclosures were not and are not authorized by AgXplore.

79.     AgXplore has made reasonable efforts to maintain the confidentiality of its trade secrets.

80.     AgXplore derives independent economic value from its trade secrets not being generally known to, and not being readily ascertainable through proper means by, other persons who could obtain economic value from AgXplore's trade secrets.  For example, AgXplore derives economic value from its competitors not knowing the confidential customer information that the Sheffers accessed as an executive and employee because competitors would be in a position to unfairly compete with and undercut AgXplore's pricing with such customers if those competitors had access to such confidential customer information.

81.      Defendants acquired AgXplore's trade secrets, including without limitation confidential customer information, under circumstances giving rise to a duty to maintain the secrecy of such information and to not use such information without AgXplore's authorization.

16

82.    Defendants' threatened and/or actual use and disclosure of AgXplore's trade secrets constitute misappropriations under the DTSA.  Defendants have, for example, used AgXplore's trade secrets, including without limitation AgXplore's confidential customer information, to call upon AgXplore's customers in competition with AgXplore.  AgXplore did not consent to Defendants' taking and use of such trade secret information, including without limitation AgXplore's confidential customer information.  As a result of that unauthorized use of AgXplore's trade secrets to identify and pursue AgXplore's customers on behalf of Defendants, Defendants have violated the DTSA.

83.    Moreover, Defendants' violations of the DTSA reflects their disregard of AgXplore's rights under the DTSA and evidence their intent to continue to violate AgXplore's statutory rights.

84.    Defendants continue to improperly use and retain these trade secrets for their own use in order to gain economic value from AgXplore's trade secret information.

85.    As a direct and proximate result of Defendants' misappropriation of AgXplore's Confidential Information, including trade secrets, AgXplore has been damaged and will continue to be damaged in an amount to be proven at trial.

WHEREFORE, AgXplore respectfully pray for the following relief:

a.    For an order requiring an accounting of all profits, compensation, commissions, remuneration, or benefits which Defendants have realized or may realize in the future as a result of any unfair competition;

b.    Restitution or disgorgement of profits in an amount greater than $25,000.00 and that is fair and reasonable;

c.    For AgXplore's attorneys' fees and costs incurred herein; and

17

d.      All other relief that this Court deems to be just and proper.

## COUNT IV – TORTIOUS INTERFERENCE WITH CONTRACT
### (Against Meristem)

86.    AgXplore realleges all other allegations set forth in this Verified Complaint and incorporates them by reference as if fully set forth herein.

87.    On April 27, 2023, AgXplore sent a letter to Meristem's CEO acknowledging Meristem's hiring of J. Sheffer, notifying Meristem of the J. Sheffer Agreement and Severance Agreement, and demanding it not interfere with the restrictive covenants contained in such agreements. A true and accurate copy of the April 27, 2023 letter to Meristem is attached hereto as **Exhibit 7**.

88.    Upon confirming the Sheffers' solicitation of an AgXplore customer, on June 6, 2023, AgXplore sent another letter to Meristem's CEO acknowledging Meristem's hiring of D. Sheffer, notifying Meristem of the Agreements, and demanding it not interference with the restrictive covenants contained in the Agreements. A true and accurate copy of the June 6, 2023 letter to Meristem is attached hereto as **Exhibit 8**.

89.    Accordingly, Meristem was aware of the Agreements with AgXplore.

90.    Meristem interfered with the Agreements between AgXplore and the Sheffers by inducing, encouraging, and facilitating the breach of the Sheffers' obligations under the Agreements.

91.    Meristem's intentional interference caused or was a significant factor in causing the Sheffers to breach the Agreements with AgXplore in that the Sheffers engaged in concerted efforts (on behalf of Meristem) to solicit, accept, and conduct business with customers of AgXplore in violation of the non-solicitation covenants and confidentiality provisions contained in the Agreements.

18

92.     Likewise, Meristem has attempted to interfere with confidentiality obligations owed to AgXplore by current and former employees of AgXplore.  For example, on information and belief, as Meristem employees, the Sheffers have misappropriated confidential business information from AgXplore and used such information in the solicitation of AgXplore customers in an attempt to divert their business from AgXplore to Meristem.

93.     Meristem's conduct described above was and is unjustified and wrongful in nature.

94.     The conduct of Meristem has directly and proximately caused significant damages to AgXplore in the form of, among other things, significant lost profits from customers wrongfully diverted from AgXplore. Meristem's wrongful conduct has also resulted in AgXplore losing the benefit of the bargain struck when the Sheffers entered the Agreements.

95.     Meristem's actions were intentional and outrageous, and with reckless disregard to the rights of AgXplore, warranting an award of punitive damages.

WHEREFORE, Plaintiff respectfully pray for the following relief:

a.      For an order requiring an accounting of all profits, compensation, commissions, remuneration, or benefits which Defendants have realized or may realize in the future as a result of any unfair competition;

b.      Damages in excess of $25,000.00, in an amount that is fair and reasonable;

c.      Punitive damages in an amount determined to be appropriate; and

d.      All other relief that this Court deems to be just and proper.

## COUNT V – UNJUST ENRICHMENT
### (Against all Defendants)

96.     AgXplore realleges all other allegations set forth in this Verified Complaint and incorporates them by reference as if fully set forth herein.

19

97. As AgXplore's Executive Vice President and Chief Operating Officer, J. Sheffer was entrusted with access to AgXplore's confidential and proprietary information.

98. As AgXplore's Sales Agronomist, D. Sheffer was entrusted with access to AgXplore's confidential and proprietary information.

99. During their employment with AgXplore, the Sheffers enjoyed, appreciated, and benefitted from the above access and use in that they were afforded the opportunity to gain experience maintaining and developing customer relationships for AgXplore's customers.

100. On information and belief, the Sheffers, acting for themselves and on behalf of Meristem, used and misappropriated AgXplore's Confidential Information and transferred that information to Meristem.

101. On information and belief, the Sheffers, on behalf of themselves and/or on behalf of Meristem) solicited AgXplore's customers to move their business to AgXplore.

102. The Sheffers' and Meristem's acceptance of business from AgXplore's customers and their retention of that business for their gain in violation of the Sheffers' obligations under the Agreements, was, and is, inequitable and unjust and caused AgXplore to be damaged.

103. Further, J. Sheffer was unjustly enriched by accepting significant monetary payments from AgXplore under the Severance Agreement while refusing to comply with the obligations set forth in those instruments.

WHEREFORE, AgXplore respectfully pray for the following relief:

e. For an order requiring an accounting of all profits, compensation, commissions, remuneration, or benefits which Defendants have realized or may realize in the future as a result of any unfair competition;

20

f.      Restitution or disgorgement of profits in an amount greater than $25,000.00 and that is fair and reasonable; and

g.      All other relief that this Court deems to be just and proper.

### COUNT VI
### CIVIL CONSPIRACY
### (Against all Defendants)

104.    AgXplore realleges all other allegations set forth in this Verified Complaint and incorporates them by reference as if fully set forth herein.

105.    On information and belief, Defendants with unity of purpose, common design, and/or meeting of the minds, reached an agreement or understanding to commit many, if not most or all, of the unlawful acts set forth in the preceding Counts.

106.    Further, Defendants have participated and continue to participate, by unity of purpose, common design, and/or meeting of the minds, in the commission of the unlawful acts set forth in the preceding Counts.

107.    On information and belief, the objective of Defendants, was unlawful and led to financial detriment of AgXplore, and benefit to the Defendants.

108.    On information and belief, the acts of Defendants described in the preceding Counts were knowingly undertaken to further carry out the unlawful purpose of the conspiracy.

109.    Defendants' conduct has directly and proximately caused AgXplore damages in an amount in excess of $25,000 to be proven at trial.

110.    Defendants' conduct was outrageous because of their evil motive and/or reckless indifference to the rights of AgXplore.

WHEREFORE, Plaintiff respectfully pray for the following relief:

21

a.      For an order requiring an accounting of all profits, compensation, commissions, remuneration, or benefits which Defendants have realized or may realize in the future as a result of any unfair competition;

b.      Damages in excess of $25,000.00 in an amount that is fair and reasonable;

c.      Plaintiff reserves the right to seek an order from the Court allowing the pleading of punitive damages upon a showing of a reasonable basis for recovery of punitive damages; and

d.      All other relief that this Court deems to be just and proper.

Dated: June 20, 2023

Respectfully submitted,

By: /s/ Ida Shafaie

Ida Shafaie, #66220MO
Mark P. Ohlms, #69262MO
Armstrong Teasdale LLP
7700 Forsyth Boulevard, Suite 1800
St. Louis, Missouri 63105
314.621.5070
314.621.5065 (Facsimile)
ishafaie@atllp.com
mohlms@atllp.com

**ATTORNEYS FOR PLAINTIFF
AGXPLORE INTERNATIONAL, LLC**

## VERIFICATION

Pursuant to 28 U.S.C. §1746, I, Tim Gutwein, agent of plaintiff herein, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

AgXplore International, LLC/Tim Gutwein